222 So.2d 224 (1969)
Linwood JEFFREYS, Appellant,
v.
Clyde H. SIMPSON, As Tax Collector of Duval County, Florida, et al., Appellees.
No. K-214.
District Court of Appeal of Florida. First District.
April 8, 1969.
Rehearing Denied May 26, 1969.
J. Turner Butler and William C. Guthrie, Jr., Jacksonville, for appellant.
Frank X. Friedmann, Jr., of Rogers, Towers, Bailey, Jones & Gay, William Joe Sears, Jr., J. Henry Blount, Stallings & Marr, Walter C. Shea, Jacksonville, for appellees.
WIGGINTON, Chief Judge.
Plaintiff landowner seeks review of a final judgment holding that the ad valorem tax assessments levied against his land by Duval County for the years 1966 and 1967 *225 are valid and binding in all respects, and constitute valid liens against his land. The sole question determined by the trial court and presented for our decision is whether during the critical tax years plaintiff's land was being used in a bona fide forestry operation, thereby entitling him to an assessment based upon the value of his land for agricultural purposes.
Plaintiff is the owner of a 66-acre parcel of land in what is known as the Arlington area of Duval County, which he purchased in 1948. At that time it was located in a sparsely populated area of the county and had been formerly utilized in a naval stores operation. Due to the substantial growth of the county which has taken place particularly during the last ten or twelve years, Arlington has become a densely populated residential urban area which has developed up to and around the parcel in question.
At the time of purchase there was growing on the land a young stand of pine timber and a quantity of hardwoods. Plaintiff constructed fire lines, protected the timber against fire and theft, and carried on what was considered to be good forestry practices as recommended by professional foresters. In 1956 plaintiff made an intermediate or improvement cut of the timber in order to remove undesirable growth and permit better growing conditions for the remainder. In 1965 all merchantable timber was cut, leaving the land in a bare cutover state on which no improvements were located or farming operations conducted. Prior to and including the year 1965 the land was classed for tax purposes as agricultural lands and assessed at a value of $50 an acre.
During the years 1966 and 1967 no replanting of timber was undertaken by plaintiff, nor was the land utilized in the pursuit of any agricultural purpose. For each of the years plaintiff timely filed an application for the classification of his property as agricultural lands to be valued and assessed as such for tax purposes. In each instance his application was disapproved by the tax assessor and his protest to the county board of equalization and review was denied. In each of the two years in question plaintiff's lands were valued for their highest and best use as residential property and assessed at a fair market value of $1870 an acre.
The controlling statute providing for the assessment of real and personal property for tax purposes provides in part as follows:
"(3) All lands being used for agricultural purposes shall be assessed as agricultural lands upon an acreage basis, regardless of the fact that any or all of said lands are embraced in a plat of a subdivision or other real estate development. Provided, agricultural purposes shall include only lands being used in bona fide farming, pasture, grove or forestry operations by the lessee or owner, or some person in their employ. * * Provided, this subsection shall not be construed, interpreted, or applied so as to permit lands being used for agricultural purposes to be assessed other than as agricultural lands and upon an acreage basis."[1]
In Stiles v. Brown[2] this court recognized that:
"* * * lands not being used for bona fide agricultural purposes must be assessed at fair market value without regard to their present use, but that agricultural lands must be assessed upon the basis of what somebody will pay for them for the purpose of raising timber, citrus, cattle, or for other farming operations. * * *"
In approving this court's decision in Stiles, the Supreme Court said:
"In Tyson v. Lanier, 156 So.2d 833, 837 (Fla.) it was held correct to conclude *226 `* * * that "just valuation" as provided in the Constitution was synonymous with "full cash value" as provided in the statute.' F.S. Section 193.021, F.S.A., added by § 1, Ch. 63-250, provided a formula for determining the `just valuation' of real and personal property as contemplated in § 1, Art. IX, State Constitution. Under this formula tax assessors, when fixing the value of taxable properties, are required to take into consideration the several factors mentioned in said F.S. § 193.021, F.S.A., as well as F.S. § 193.11(3), F.S.A., which adds to the formula the factor of agricultural use of lands. See Lanier v. Overstreet, 175 So.2d 521 (Fla. 1965), and Markham v. Blount, 175 So.2d 526 (Fla. 1965). This formula should be followed by the boards of county commissioners when sitting as boards of tax equalization, and valuations of real and tangible personal property must be determined by application of said factors."[3]
In its final judgment the trial court found and concluded that plaintiff has not carried the burden of establishing a bona fide forestry operation within the purview of Section 193.11(3), Florida Statutes, F.S.A., supra. The court further concluded that the evidence presented and the failure to present certain evidence leads to the conclusion that plaintiff is not in good faith using the subject property for bona fide agricultural purposes. Based upon that conclusion the court held that since the assessed value of the property was not challenged as being in excess of its fair market value, no portion of the assessment for the years in question should be stricken as illegal.
Appellant contends and strongly urges that the court erred in reaching the conclusion expressed above because the evidence establishes that during the years in question he was in fact using his land in a bona fide forestry operation, thereby requiring that his property be classed for tax assessment purposes as agricultural lands. To support this position plaintiff points to the evidence indicating his knowledge of and interest in timber operations extending back over a long period of time, and his utilization of the property in question for forestry purposes ever since the time of its purchase in 1948 to and including the present time. Plaintiff testified that after cutting all merchantable timber, he permitted his land to lie fallow during the two tax years in dispute in order to eliminate a possible infestation of wood borers and correct a diseased condition of the soil which would militate against an immediate replanting program; that toward the end of 1967 he entered into a contract for the purchase and planting of pine seedlings on his land, although admitting that no planting had been done at the time the final hearing in this case was held on February 12, 1968. Plaintiff further testified that it was his intention to continue his forestry operation which he had conducted since purchasing the land by replanting it to pine as soon as was practicable following the harvest of his timber crop in 1965, and that at no time did he cease using the land for agricultural purposes.
In juxtaposition to plaintiff's position is evidence which establishes that it is not economically feasible to conduct a timber operation on land that has a market value in excess of $200 an acre; that if plaintiff's land was replanted with pine seedlings, it would be from twenty-five to two hundred years before he could realize any economic benefit from his timber operation; that in view of the fact that plaintiff's land is located in an urbanized area surrounded by residential development and has a fair market value in excess of $2,000 an acre for immediate use as residential property, plaintiff would not be justified in recommencing a forestry operation upon the land.
The posture of the case when presented to the trial judge on final hearing posed *227 the critical question of whether plaintiff was using his land in a bona fide forestry operation during the tax years 1966 and 1967. The term "bona fide" has been aptly defined to mean:
"In or with good faith, honestly, openly, and sincerely; without deceit or fraud * * * real, actual, genuine and not feigned."[4]
When viewed in a light most favorable to plaintiff, the evidence will reasonably support the conclusion that after harvesting all merchantable timber from the land in 1965 he continued his forestry operation in accordance with professionally recommended practices by permitting his land to lie fallow for the ensuing two years in order to restore the soil to a desirable condition before replanting it to pine seedlings in 1968, and that all during this period plaintiff had a bona fide intent to continue in the agricultural pursuit of raising pine timber as he had done in the past.
On the contrary, however, when viewed in a light most favorable to the judgment here assaulted, the evidence will reasonably support the conclusion that plaintiff ceased his forestry operation on the land after harvesting all merchantable timber therefrom in 1965, and that he entered into a contract in the last month of 1967 to have his land replanted with pine seedlings only as a subterfuge to enable him to secure a revaluation of his land for agricultural purposes at the lower rate and avoid the payment of taxes based upon an assessment of his property at its fair market value, the rate of which is not contested.
The trial judge, in the exercise of a discretion vested in him by law, adopted the latter view expressed above and found that plaintiff was not using his land in a bona fide forestry operation during the years 1966 and 1967. The judgment here questioned, based as it is upon the trial judge's evaluation of conflicting evidence and his determination of the credibility of the witnesses, is clothed with a presumption of correctness and may not be disturbed on appeal except by a clear showing that it is unsupported by competent and substantial evidence or otherwise constitutes an abuse of discretion. Appellant having failed to make error clearly appear, the judgment appealed is affirmed.
CARROLL, DONALD K., and RAWLS, JJ., concur.
NOTES
[1] Section 193.11, Florida Statutes, F.S.A.
[2] Stiles v. Brown (Fla.App. 1965), 177 So.2d 672, 676.
[3] Stiles v. Brown (Fla. 1966), 182 So.2d 612, 615.
[4] Black's Law Dictionary 223 (4th Edition).